THE O. F. B. INVESTMENT CORP., APPELLEE, *v.*
THE "OL-FASHUN" BREWING CORP., APPELLEE;
CHESTER A. MYERS, COUNTY TREAS.,
APPELLANT.

(No. 2076—Decided November 24, 1950.)

*Mr. Henry L. Beigel* and *Mr. John J. Benjamin,* for appellees.

*Mr. Matthias H. Heck,* prosecuting attorney, and *Mr. Eugene B. Bacher,* for appellant.

WISEMAN, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Montgomery County.

The sole question before the court is whether delinquent personal property taxes owing to the treasurer of Montgomery county prior to the appointment of a receiver are without preference and are in the same class as claims of general creditors.

The trial court, in an order of distribution, ruled that delinquent personal property tax claims should be prorated with the claims of general creditors. The appellant, treasurer of Montgomery county, contends that the judgmenqt of the trial court is contrary to law in that under several sections of the Code and the case law in Ohio the claim for delinquent taxes accruing prior to the appointment of a receiver has a preference over the claims of general creditors.

Section 8339, General Code, in part provides:

"In all cases when property of an employer is placed in the hands of an assignee, receiver or trustee, claims due for labor performed within the period of three months prior to the time such assignee, receiver or trustee is appointed, shall first be paid out of the trust fund, in preference to all other claims against such employer, *except claims for taxes* and the cost of administering the trust." (Emphasis ours.)

Section 11138, General Code, provides:

"*Taxes of every description assessed against the assignor* upon personal property held by him before his assignment must be paid by the assignee or trustee out of the proceeds of the property assigned in preference to any other claims against the assignor. Every person who has performed labor as an operative in

the service of the assignor, within twelve months preceding the assignment, shall be entitled to receive out of the trust funds, before the paying of other creditors, the full amount of wages due for such labor, not exceeding three hundred dollars." (Emphasis added.)

It will be observed that under the first sentence of the latter section taxes are paid out of the proceeds of the property assigned in preference to any other claims against the assignor, and under the second sentence certain labor claims are preferred in payment out of trust funds. It appears that it was the intention of the Legislature that a personal property tax claim which had been assessed against the property before the assignment is preferred over any other claims filed against the assignor, and that labor claims are preferred over claims of other creditors in the distribution of trust funds.

It will be observed that Section 8339, General Code, applies to an "assignee, receiver or trustee," whereas Section 11138, General Code, mentions property administered only by an "assignee or trustee." In *St. Mary's Machine Co.* v. *National Supply Co.,* 68 Ohio St., 535, 67 N. E., 1055, 96 Am. St. Rep., 677, 64 L. R. A., 845, in construing Sections 3206-*a* and 6355, Revised Statutes (now Sections 8339 and 11138, respectively, General Code), the court said:

"Said Section 6355 applies only to assignees and trustees, while the other section, applies to assignees, trustees and receivers; but when the section is properly construed as to assignees and trustees, the same construction must be applied to receivers, because in said Section 3206-*a* all three stand upon exactly the same footing."

Thus the Supreme Court in the above case concluded that the two sections were *in pari materia* and must be construed together.

The appellant cites also Section 1465-88, General Code, a part of the Workmen's Compensation Act, which in part provides as follows:

"In all cases where property of an employer is placed in the hands of an *assignee, receiver or trustee,* claims arising under any award or finding of the Industrial Commission, pursuant to the provisions of this act, including claims for premiums, and any judgment recovered thereon shall first be paid out of the trust fund in preference to all other claims, *except claims for taxes and the cost of administration, and with the same preference now given to claims for taxes.*" (Emphasis ours.)

In the administration of the estates of deceased persons, under the provisions of Section 10509-121, General Code, the assets of the deceased are distributed in a certain order of priority as fixed by that section, and it provides that personal property taxes are paid under class six; that debts for manual labor performed for the deceased within 12 months preceding decedent's death not exceeding $150 are paid in class 7; and that all other claims are paid in class 8 or 9, depending upon the time of presentment.

From these statutory provisions the court could easily find an intention of the Legislature to declare a policy that the personal property taxes should be paid in preference to the claims of general creditors, in all cases where funds are being administered by a fiduciary. The case law of Ohio is divergent on this question. A detailed discussion and extended quotations from the opinions will not serve any useful purpose. However, we will make brief comment on a number of cases bearing upon this question, taking up the cases in chronological order.

In *Creech* v. *P. A. & W. Rd. Co.*, 2 N. P., 164, 3 O. D. (N. P.), 265, Judge Voris of the Common Pleas Court

of Summit County, in 1895, held that delinquent personal property taxes accruing before the appointment of a receiver should be paid in preference to the claim of a chattel mortgagee. The court took the position that "the power of taxation is indispensable to the exercise of any government"; that "the power to levy and collect the tax overshadows all such property within the state—no matter by whom or how owned"; and that "it matters not whether the property be in the hands of its real owner, or in that of his agent, trustee, or in the hands of a tort feasor; or whether the owner be under legal disability or not—infancy, coverture or mental incapacity, even death itself, can interpose no bar to the exercise of this prerogative of the state; and failure to pay the taxes in any such case, leaves the property taxed liable."

In *Commercial Mortgage Co.* v. *Syfert*, 24 N. P. (N. S.), 157, Judge Scarlett of the Common Pleas Court of Franklin County, in 1922, held that "taxes and penalties on personal property in the hands of a receiver or assignee have priority over the claims of all classes of creditors."

That court quoted with approval the case of *Marshall* v. *New York*, 254 U. S., 380, 41 S. Ct., 143, 65 L. Ed., 315, with opinion by Mr. Justice Brandeis, in which it was held that under the laws of New York priority of payment was given to a tax claim by virtue of the prerogative right of the state under the common law. The court found that the common law had been adopted and generally recognized in the state of New York.

Judge Scarlett held that there is no expressed constitutional or statutory provision in Ohio adopting the common law as there is in the state of New York, but that so far as it is adapted to our institutions and circumstances the common law is applicable to the affairs

of this state, citing *State* v. *Wing,* 66 Ohio St., 407, 64 N. E., 514. The court then pointed out that this prerogative has been asserted with respect to personal taxes in Section 5371, General Code, which provides that personal property subject to taxation shall be liable to be seized and sold for taxes, and under Section 2658, General Code, the county treasurer may distrain sufficient funds and chattels for the payment of personal property taxes. Judge Scarlett then, in construing Section 8339, General Code, stated:

"If labor claims are privileged over all claims *except claims for taxes* and the cost of administration, then claims for taxes are, of necessity, also preferred claims. The clear inference therefrom is either that the Legislature had in mind and thereby recognized the common-law prerogative or its equivalent, as expressed in the statutes referred to, or thereby declared a priority to be followed in the administration of estates by receivers and assignees. Whichever the reason, this court, as a state court, is controlled thereby."

The court then cited the case of *Hamilton* v. *David C. Beggs Co.,* 171 F., 157, with approval.

In *Touzalin Agency Co.* v. *Dick Manufacturing Co.,* 30 N. P. (N. S.), 139, Judge Harter of the Common Pleas Court of Stark County, in 1930, took the contrary view and held that "personal taxes accruing prior to the receivership against the property of the estate being administered do not have any priority over other general claims against the estate but share pro-ratably with the general claims"; and that "it is the settled doctrine in Ohio that a tax law must be construed strictly against the state."

The court declined to adhere to the doctrine of the prerogative right of the state under the common law.

In *Clegg* v. *Dayton & Troy Electric Ry. Co.,* 31 N. P. (N. S.), 37, Judge Snediker of the Common Pleas Court of Montgomery County, in 1933, held:

"Property is not withdrawn from taxation by being taken into the hands of the court upon the appointment of a receiver, but remains subject to assessment and to the payment of all legal taxes thereon while *in custodia legis* to the same extent as it was while in the possession of the owner, regardless of the inability of the ordinary revenue officers to enforce the state's paramount right by the summary process of distress; hence, unpaid taxes, penalties and assessments constitute a preferred claim upon funds in the hands of the receiver who must see that such assessments are paid before the funds are distributed to other creditors."

In that case, Judge Snediker said:

"It is insisted that there is no statute which makes personal property tax a lien upon such property, and that in the absence of such a provision personal property taxes are but a general claim, and that the state or county, which is a subdivision of the state, is only entitled to participate in the distribution as does any general creditor." (The same contention is made in the case at bar.)

Judge Snediker then proceeded to review the case law in Ohio and concluded that "certain special sections of the Code have from time to time been passed by the Legislature of Ohio which directly recognizes the priority of taxes with respect to other preferred claims on property and funds in the hands of a fiduciary officer or a receiver."

The court seems to have adopted the reasoning in *Greeley* v. *Provident Savings Bank,* 98 Mo., 458, 11 S. W., 980, which is quoted at length and which we deem to be worthy of notice. The quotation is as follows:

" 'The amount of taxes was undisputed and the receiver had in his hands funds sufficient to pay them, and we think the order should have been made. It may

be conceded that the state did not have an express lien upon the assets that went into the hands of the receiver, but it had a right paramount to other creditors to be paid out of those assets, a right which it could have enforced through its revenue officers by the summary process of distress, but for the fact that the property and assets of its debtor had passed into the custody of its courts, whose duty it was in the administration and distribution of those assets to respect that paramount right, upon the untrammeled exercise of which depends the power to protect the very fund being distributed, and to maintain the existence of the tribunal engaged in distributing it; and to make no order for the distribution of assets *in custodia legis* except in subordination to that right. The ordinary revenue officers of the state being deprived of the ordinary means of securing the state's revenue from the fund in the custody of the court, the duty devolved upon the court to be satisfied and upon the receiver to see that the taxes due the state were paid before the estate was distributed to other creditors and we can conceive of no scheme of administration that the court could properly adopt by which the state's demand could be reduced to the level of an ordinary debt, and be cut off unless presented to the court for allowance within a given time.' ''

In *Ohio Casualty Ins. Co.* v. *Freshwater Construction Co.*, 32 N. P. (N. S.), 464, Judge Ewing of the Common Pleas Court of Cuyahoga County, in 1933, held that ''delinquent personal property taxes * * * [are] not entitled to payment by receiver out of proceeds of mortgaged chattels in preference to claim of mortgagee after condition broken, on theory of common-law prerogative of sovereign.''

In *Steele* v. *Elthor Drug Co.*, 15 Ohio Law Abs., 21, the Court of Appeals for Mahoning county, in 1933,

held that Sections 8339 and 11138, General Code, are *in pari materia* and are to be considered and construed together. The court there held that ''while it is not expressly declared in Ohio that personal property taxes are a lien upon the personal property of the owner, yet it has been very generally held that such claim takes preference over claims of general creditors in the settlement of a trust estate.''

The court then cited and discussed a number of the cases cited in this opinion, recognizing the prerogative right of the state to require the payment of personal property taxes before payment of general creditors.

In *Hamilton* v. *David C. Beggs Co.,* 171 F., 157, the court held:

''While there is no statute in Ohio directly making taxes a lien on personal property, Rev. St. Ohio Section 3206*a*, providing that 'where property of an employer is placed in the hands of a * * * receiver, claims due for labor * * * shall be first paid out of the trust fund in preference to all other claims against such employer, except claims for taxes and the costs of administering the trust,' in effect makes the claims specified, including taxes, a lien on the fund in such cases, and they are entitled to priority of payment as against the claims of general creditors.''

The court in that case said:

''Whether it was the opinion or not of the Legislature that taxes on chattels were a prior lien on personal property, the statute ought to be construed as giving what is tantamount to a lien on property falling within the terms of its provisions, if it did not already exist, in order that the effect of the language relating to taxes may not be destroyed. * * * The priority is plainly implied in the language of the statute, and has the same force and effect as if it had been expressed in unequivocal language. * * *

''The taxes and penalty in question as against the

common creditors are entitled to priority of payment, and an order may be drawn accordingly.''

In 7 Ohio Jurisprudence, 917, Section 78, the text is as follows:

''The common-law doctrine of the priority of tax liens has been ratified. The crown of Great Britain, by virtue of a prerogative right, has a priority over all subjects for the payment of one of a debtor's property of all debts due it, effective alike whether the property is in the hands of a debtor, of a third person, or *in custodia legis*. The priority can be defeated only through the passing of title to the debtor's property or by way of lien, before the sovereign sought to enforce his right. The common-law prerogative of the sovereign should be of value at least, in interpreting the statutes on the subject of personal taxes and supply light if the statutory provisions are incomplete or lacking in clearness. In the matter of taxes on real property the prerogative right is extended to give such taxes priority over prior incumbrances, but as to personal taxes it is merely provided that 'all personal property subject to taxation shall be liable to be seized and sold for taxes,' and by another section, 'when personal taxes are past due and unpaid, the county treasurer may distrain sufficient funds and chattels belonging to the person charged with such taxes,' etc. These provisions are in effect the common-law prerogative, without priority over conveyances, incumbrances or liens effected before the sovereign's seizure. By another section of the law, it is provided, 'In all cases when property of an employer is placed in hands of an assignee, receiver or trustee, claims due for labor performed within the period of three months' prior to the time of the appointment of such assignee, etc., shall first be paid in preference to all claims, 'except claims for taxes and costs of administering the trust.' The Legislature, therefore, recognized the

common-law prerogative or its equivalent in the statutes referred to, in thereby declaring a priority to be followed. As a matter of fact the federal court has given controlling effect to this statute. A receiver was therefore ordered to pay the personal taxes and penalties of the debtor in preference to all claims of general creditors.''

After a consideration of the case law in Ohio thus far cited this court would have little difficulty in concluding that the delinquent personal property taxes accruing prior to the appointment of a receiver should be paid in preference to claims of general creditors. But an appellee contends that the Supreme Court in *George D. Harter Bank* v. *McKinley Lumber Co.*, 136 Ohio St., 465, 26 N. E. (2d), 587, has decided otherwise. Such appellee calls our attention to the statement of the court on page 468. The court cited the case of *St. Mary's Machine Co.* v. *National Supply Co., supra,* which held that Sections 8339 and 11138, General Code, are *in pari materia* and must be read and construed together. Then follows this statement:

''This being so, they are confined to *assignments, trusts and receiverships in connection with the assets of employers of labor and where labor claims are involved.*

''But giving the first part of Section 11138, General Code, referring to taxes, the broadest possible scope, it is limited by its terms to taxes 'assessed against the *assignor* upon personal property held by him before his *assignment.*' Sections 8339 and 11138, General Code, cannot reasonably be extended to give priority to the payment of personal property taxes in a case where there are no 'labor claims' and no 'assignor,' as here.'' (Italics ours.)

In the case at bar no labor claims are involved and, hence, it is claimed the statement of the Supreme Court is applicable and controlling in this case. But

in that case the issue was whether personal property taxes should be paid prior to the claim of a judgment lien holder. The trial court in that case found that because of its levy of execution the judgment creditor had the first and best lien on the funds in the hands of the receiver and was entitled to be paid ahead of the personal property taxes which were due at the time the levy was made. The judgment of the trial court was reversed by the Court of Appeals. The Supreme Court allowed a motion to certify. The Supreme Court stated the question for determination as follows:

"Under the facts outlined above, is the bank by reason of its execution lien or the county treasurer because of his claim in connection with the personal property taxes entitled to priority of payment out of the moneys held by the receiver?"

The court stated that in Ohio there is no lien upon personal property for taxes thereon and commented on the common-law prerogative of the state. The court then, on page 467, made this statement:

*"Therefore, when the state and private persons bear the relationship of general creditors to a debtor, or have claims of equal standing against him, the state is accorded priority in payment."* (Emphasis ours.)

The court, on page 467, held:

"However, when a diligent creditor acquires a specific lien upon assets of the debtor before the sovereign authority undertakes to enforce its right, the creditor prevails. * * *

"Consequently, in the pending case it is unnecessary to decide whether the general principle of sovereign prerogative obtains in Ohio with all its common-law force * * *. The Harter Bank as a judgment creditor, having secured an execution lien on the personal property of the lumber company before any steps were taken to subject such property to the payment of the

taxes, must be given a preferred position, unless some statutory enactment requires a contrary holding.''

We agree with that conclusion. The syllabus of that case is as follows:

''Where a judgment creditor secures a valid execution lien against the tangible personal property of the debtor before the state has moved to subject such property to the payment of delinquent personal property taxes thereon, such creditor is entitled to priority in the payment of its claim, in the absence of any applicable statute giving the personal property taxes precedence by way of lien or otherwise.''

The syllabus is the law of the case and conforms to the facts. The statement of the court, on page 467, to the effect that when the state and private persons bear the relationship of general creditors to the debtor, the state is accorded priority, when applied to the facts in this case would require the payment of the personal property taxes ahead of the claims of general creditors. The statement of the court, on page 468, that Sections 8339 and 11138, General Code, apply only where labor claims are involved has no bearing on the issues presented and clearly is obiter dictum. If either statement is given application here it would be the former rather than the latter. However, that case is easily distinguished from the instant case on the facts. The issue presented here has never been presented to the Supreme Court.

We hold that personal property taxes accruing before the appointment of the receiver should be paid in preference to the claims of general creditors.

The judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

MILLER, P. J., and HORNBECK, J., concur.