[No. 23616. Department Two. February 1, 1932.]

THE STATE OF WASHINGTON, *Appellant*, v. FRED W. CARLYON, *as Receiver for The Bookstore, Inc., Respondent.*[1]

*The Attorney General* and *Chas. O. Flint,* for appellant.

*Frank C. Owings,* for respondent.

HOLCOMB, J.—On July 17, 1930, respondent was appointed as general receiver for the insolvent Bookstore, Inc., a corporation. Prior thereto, the state treasurer had paid to the Bookstore, Inc., certain state money, taking in return therefor some coupon books of the Bookstore which entitled the state treasurer to merchandise of the corporation upon presentation and surrender of such coupons. At the time of the appointment of the receiver there was still due and unused by the state treasurer coupons for which he had paid the sum of $840. After the appointment of the receiver and publication of his notice to creditors to file their verified claims, the state timely filed with him its verified proof of claim for $840, asserting therein a preference over general creditors by virtue of its sovereignty.

[1]Reported in 7 P. (2d) 572.

At the hearing on the final report of the receiver, the state admitted and here admits that it has taken no other action looking to liquidation of its claim than the filing of the claim with the receiver. The records show that there is sufficient money on hand to pay the state claim in full if it is allowed preference over general creditors, but not sufficient to pay its claim in full if it is rated as a general claim.

By its final order, the trial court denied the state a preference, but allowed its claim as that of a general creditor, from which this appeal is prosecuted.

The only error assigned and argued by the state is in denying its preference over general creditors and allowing its claim as that of a general creditor only.

Rem. Comp. Stat., § 143, is quoted and relied upon by appellant, which reads:

"The common law, so far as it is not inconsistent with the constitution and laws of the United States, or of the state of Washington, nor incompatible with the institutions and condition of society in this state, shall be the rule of decision in all the courts of this state."

Appellant asserts that there is no constitutional provision nor statutory enactment providing for any priority in favor of general creditors over the state, nor any such provision or enactment by virtue of which it may be argued that such a priority in favor of the state is incompatible with our institutions or conditions of society.

Nor is there any statutory or constitutional mandate giving the state an express lien on the assets existing at the time they passed into the receiver's hands.

There is ample ground for denying the preference here claimed, for the reason that any right to a preference in the payment of claims against the insolvent which the state may have by virtue of its sovereignty,

or the common law of England, is lost where no claim therefor was made by the state prior to the time that the assets of the insolvent passed into the hands of the receiver. *Aetna Casualty & Surety Co. v. Moore,* 107 Wash. 99, 181 Pac. 40; *North Carolina Corporation Commission v. Citizens' Bank & Trust Co.,* 193 N. C. 513, 137 S. E. 587, 51 A. L. R. 1350, and notes.

The *Attorney General* insists, however, that our case above cited was decided solely upon the ground that it arose under our banking statute, which provided for liquidation by the state banking examiner as virtual receiver, which made no provision for a preference by the state, and that otherwise that decision is in a great minority of decisions of the courts of this country.

In our cited case, there is a comprehensive review of authorities, English and American, pro and con, and we deliberately adopted the so-called minority rule which apparently is gradually growing into a majority rule. See annotations to *People v. Farmers' State Bank,* 335 Ill. 617, 167 N. E. 804, 65 A. L. R. 1331.

The instant case is not one where the state seeks preference in the collection of a tax, license fee, or excise. In such a case, the state would act purely governmentally, and doubtless would be entitled to preference over all other claims affecting the matter. Here, the state, as a creditor, is merely seeking to collect a fund which it manifestly holds in a proprietary capacity. In all such cases, the trend of our decisions has been to hold a public corporation, such as a county, which is a subdivision of the state, to the same principles of common honesty and natural justice as would obtain between private concerns (*Franklin County v. Carstens,* 68 Wash. 176, 122 Pac. 999), and that the state itself is bound by principles of equi-

table estoppel, and in its business relations with individuals must not expect more favorable treatment than is fair between men. *State ex rel. Washington Paving Co. v. Clausen,* 90 Wash. 450, 156 Pac. 554, L. R. A. 1917A 436, and cases cited.

Appellant also quotes and relies on *Marshall v. New York,* 254 U. S. 380, as follows:

"At common law the crown of Great Britain, by virtue of a prerogative right, had priority over all subjects for the payment out of a debtor's property of all debts due it. The priority was effective alike whether the property remained in the hands of the debtor, or had been placed in the possession of a third person, or was *in custodia legis.* The priority could be defeated or postponed only through the passing of title to the debtor's property, absolutely or by way of lien, before the sovereign sought to · enforce his right."

That court, also, in the course of its opinion, said that:

"Whether the priority enjoyed by the state of New York is a prerogative right or merely a rule of administration, is a matter of local law."

There is therefore nothing in that decision which would overrule the effect of the *Aetna* case in this state. Our decision is consonant with the higher principles of justice which should obtain between the state and its citizens in the absence of provisions of positive law to the contrary, which, of course, the state could enact.

In the absence of such positive law, we consider that the state should have no right of preference over its private citizens in dealing in an ordinary business matter with its own citizens.

The order is right, and is affirmed.

TOLMAN, C. J., MAIN, BEALS, and MILLARD, JJ., concur.